UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TIFFANY WIGGINS,<br><br>    Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>    Defendant. | Case No. 15-14238<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [9]
AND DENYING PLAINTIFF'S MOTION FOR SUR REPLY [13]**

Plaintiff Tiffany Wiggins fell behind on her mortgage payments. She applied to the loan servicer, Defendant Ocwen Loan Servicing, LLC, for a loan modification. Ocwen denied her request. Wiggins tried to appeal, urging that Ocwen's denial letter had inflated her income and understated her monthly mortgage payment. When that failed, she sued Ocwen in Michigan state court to stop the then-pending foreclosure action, asserting claims under the Real Estate Settlement Procedures Act (RESPA) and state-law. After the case was removed here, Ocwen filed a motion to dismiss. For the reasons that follow, the Court agrees with Ocwen that Wiggins' Complaint fails to plausibly allege claims for which relief may be granted.

**I.**

This case surrounds Plaintiff Tiffany Wiggins' mortgage for her home on Maple Lawn Drive in Shelby Township, Michigan. The factual allegations of her Complaint explain very little about the underlying mortgage. But according to documentation attached to the Complaint, in November 2006, Wiggins executed an adjustable rate note for $516,800.00 with a lender, Sebring Capital Partners, Limited Partnership. (R. 1, PID 87.) Along with the note, she executed

a mortgage that conveyed a security interest in the property to Mortgage Electronic Registration Systems, Inc. (MERS). (*Id.*) The mortgage was recorded with the Macomb County Register of Deeds on June 11, 2007. (*Id.*) It is implicit in the Complaint that Defendant Ocwen Loan Servicing, LLC is the mortgage servicer.

According to the Complaint, in "February 2015," Wiggins requested "a modification review" from Ocwen because she had lost income, was injured on the job, and her son was ill. (R. 1, PID 10 ¶ 2.)

But the Complaint omits several key dates that are material to her claim that Ocwen violated federal mortgage servicing regulations by proceeding with foreclosure despite her pending loan modification application. According to an "Affidavit of Publication" Ocwen has attached to its motion, Ocwen first published notice of the foreclosure on February 19, 2015, indicating that the sale was scheduled for March 20. (*See* R. 9-19, PID 385.) Ocwen has also attached an "Affidavit of Posting," which indicates that notice of the foreclosure was posted on the door frame of Wiggins' property on February 26, 2015.[1] (*See* R. 9-19, PID 383.) Yet, according to Wiggins' application for loan modification, also attached to Ocwen's motion, she did not apply for loan modification until February 26, 2015—after Ocwen's first notice of foreclosure.[2] (*See* R. 9-11, PID 298.)

Dates aside, Wiggins alleges that in an April 27, 2015 denial letter, Ocwen "returned an explanation that did not make sense." (R. 1, PID 10 ¶ 2.) Specifically, Ocwen allegedly inflated

---

[1] The Court may consider the affidavit of publication and affidavit of posting—and the sheriff's deed to which they are attached—on a motion to dismiss because they are "public records or are otherwise appropriate for the taking of judicial notice." *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (citation omitted).

[2] The Court may consider Wiggins' February 26, 2015 loan modification application as "part of the pleadings" because it was "referred to in the complaint" and "central to" Wiggins' claim. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (citation omitted).

Wiggins' monthly income, understated her monthly mortgage payment, and provided inconsistent values concerning the unpaid principal balance on the loan. (*Id.*)

Wiggins appealed to Ocwen, pointing out the erroneous information. (R. 1, PID 11 ¶ 3.) Ocwen asked her to send a "new modification package," which she provided on June 19, 2015. (R. 1, PID 11 ¶ 4.)

Wiggins claims that during the process, "numerous" Ocwen agents "assur[ed]" her that "her loan [would] be reviewed again for the modification." (R. 1, PID 11 ¶ 5.) On August 12, 2015, Ocwen confirmed by letter that it had received Wiggins' appeal. (R. 1, PID 11 ¶ 6.) But the next day, Ocwen sent another letter denying her request for loan modification, again allegedly inflating Wiggins' income ($10,294.33 instead of $6,800) and understating her monthly payment ($2,153.93 instead of $3,080.20). (R. 1, PID 11 ¶ 7.)

In response, Wiggins called Ocwen and spoke with an agent who informed her that Ocwen was "looking into the matter" but that the sheriff's sale scheduled for September 25, 2015 would proceed if no resolution was reached. (R. 1, PID 11 ¶ 8.) At the time of the Complaint, Wiggins says she was "still receiving calls from Defendant Ocwen regarding the loss mitigation process, yet [was] also being told the sale has already been scheduled and will not be postponed." (R. 1, PID 11 ¶ 9.)

Wiggins filed her Complaint against Ocwen in Macomb County Circuit Court on September 23, 2015, and the case was removed to this Court on December 3, 2015. (R. 1.) The Complaint includes four counts. Count I asserts a claim that Ocwen violated the Regulation X under the Real Estate Settlement Procedures Act (RESPA). Count II asserts a claim of "Illegal Foreclosure in Violation of MCL 600.3204." Count III asserts a claim of negligence, and Count IV is labelled as a claim for "exemplary damages."

Shortly after the Complaint was filed, the Court referred the parties to an early settlement conference, but the case was not resolved. (R. 3.) According to the sheriff's deed attached to Ocwen's motion, a sheriff's sale was executed on May 27, 2016 for $692,302.25. (R. 19-19, PID 384.) Ocwen then filed a "Motion to Dismiss And/Or for Summary Judgment" on June 29, 2016. (R. 9.) Though Ocwen did not file a reply to Wiggins' response, Wiggins filed a motion for a sur reply on December 17, 2016. (R. 13.) After careful consideration of the briefs and thorough review of the record, the Court finds that oral argument will not aid in resolving the pending motions. *See* E.D. Mich. LR 7.1(f)(2).

## II.

### A.

A threshold issue is what to make of Ocwen's dual-labelled motion: Is it a motion to dismiss or a summary-judgment motion?

Ocwen filed what it calls a "Motion to Dismiss And/Or for Summary Judgment." (R. 9.) The motion cites the controlling standards for motions under Federal Rule of Civil Procedure 12(b)(6) and for summary-judgment motions under Rule 56. The brief's headings indicate that each count of the Complaint fails to state a claim for which relief may be granted—consistent with a Rule 12(b)(6) motion. But attached to the motion are certain documents that were not included with the Complaint, with no explanation of which, if any, of the documents can be appropriately considered in connection with a Rule 12(b)(6) motion.

Wiggins' response does not make anything easier. She too cites the standards for both motions and, unfortunately, relies on the now-repudiated *Conley v. Gibson*, 355 U.S. 41 (1957), "no set of facts" standard for Rule 12(b)(6) motions. (*See* R. 10, PID 448.)

But more problematic for Wiggins is that she has attached to her response a host of documents, including an affidavit and other materials, which tell an entirely different story from the narrative in the Complaint. As discussed, the Complaint centers on her February 2015 application for loan modification, referring to it—misleadingly, as it turns out—as her "first modification package." (*See* R. 1, PID 10 ¶ 2.) In contrast, her response brief attempts to show that Ocwen violated RESPA through its handling of her loan modification requests dating back as early as February 2012.

The Court sees no reason to consider Wiggins' prior loan modification attempts. She obviously knew the underlying facts when she filed her Complaint, yet chose to omit them. And she has not requested to amend her Complaint to tell this new narrative. Considering this information now would be tantamount to allowing Wiggins to amend her Complaint through her response brief, but "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss[.]" *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (first alteration in original).[3] Thus, the Court will not consider the documentation of Wiggins' loan modification attempts predating the February 2015 application at the center of the Complaint.

As the Court believes that this case can be resolved on the pleadings, it will treat Ocwen's motion as a Rule 12(b)(6) motion and consider only the documents appropriate for that posture. The Court thus excludes from consideration all of the documents attached to the parties' briefing not otherwise attached to the Complaint except for the sheriff's deed and the accompanying affidavit of posting and affidavit of publication, as discussed above. *See* Fed. R.

---

[3] The same would be true had the Court treated Ocwen's motion as one for summary judgment. *See Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005).

Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

### B.

When a defendant moves to dismiss pursuant to Rule 12(b)(6), the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), governs. Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[] the court to draw the reasonable inference that the defendant is liable[.]" *Id.* at 678. Although this plausibility threshold is more than a "sheer possibility" that a defendant is liable, it is not a "'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff has presented enough factual matter to "'nudg[e]'" her claim "'across the line from conceivable to plausible'" is "a context-specific task" requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

### III.

### A.

The Court begins with Count I, which asserts a claim that Ocwen violated the loss mitigation procedures servicers must follow under rules promulgated by the Bureau of Consumer Financial Protection under RESPA. *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696 (January 10, 2014) (codified at 12 C.F.R. § 1024.41). Wiggins claims that Ocwen violated these procedures by "referring [her] loan to foreclosure after loss mitigation had begun and the review was in process" and by

6

"continu[ing] to pursue the foreclosure sale" "after knowing of [the] error in [Wiggins'] income any payment information[.]" (*See* R. 1, PID 15 ¶ 17.)

The two regulatory provisions Wiggins cites do limit a servicer's ability to proceed with a foreclosure in certain circumstances when a mortgager has applied for loan modification. But Wiggins does not state a plausible claim for relief under either provision.

The first provision Wiggins says Ocwen violated is 12 C.F.R. § 1024.41(f)(2), which—outside of certain exceptions—prohibits a servicer from making "the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process" if "a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) . . . or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process." (The "pre-foreclosure review period" described in § 1024.41(f)(1) provides for a period in which "[a] servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process" unless an exception applies, such as when "[a] borrower's mortgage loan obligation is more than 120 days delinquent." *See* 12 C.F.R. § 1024.41(f)(1)(i).)

Wiggins' claim under § 1024.41(f)(2) fails two reasons. For one, her Complaint does not plausibly state that she filed a "complete loss mitigation application." The regulation defines a "complete loss mitigation application" as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1). Nothing in the Complaint, even in conclusory fashion, suggests that is what Wiggins sent Ocwen in February 2015.

7

Furthermore, even assuming that Wiggins' application was complete, nothing in the Complaint suggests that Ocwen violated § 1024.41(f)(2) by making its first notice at an improper time—that is, after receiving the application. Notably, the Complaint does not provide the relevant dates: it does not say when Ocwen made its first notice, and Wiggins alleges only vaguely that her loan modification application was made in "February 2015." (R. 1, PID ¶ 2.)

But certain documents Ocwen attached to its motion—which as discussed, the Court may consider—show that Wiggins applied for loan modification only after Ocwen made its first foreclosure notice. The relevant notice here was made pursuant to Michigan Compiled Laws § 600.3208, which covers notices of foreclosure by publication. According to an "Affidavit of Publication," Ocwen first provided notice of the foreclosure via publication in the Macomb County Legal News on February 19, 2015, stating that the foreclosure sale would happen on March 20, 2015. (R. 9-19, PID 385.) Yet Wiggins' loss mitigation application, which took the form of a "request for mortgage assistance," carries a later date of February 26, 2015. (R. 9-11, PID 302.) Thus, because her application for loan modification came only after Ocwen's first notice of foreclosure, Wiggins has not stated a plausible claim that Ocwen violated § 1024.41(f)(2).

The second provision at issue is Section 1024.41(g)(2), which—again, outside of certain exceptions—prohibits a servicer from "mov[ing] for foreclosure judgment or order of sale, or conduct[ing] a foreclosure sale" if "a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale."

Wiggins' claim under this provision again fails for two reasons. To reiterate, she has not plausibly alleged that she made a "complete" loss mitigation application. And even if her

8

application had been complete, it came too late for this provision to apply—she applied on February 26, 2015, less than 37 days before the scheduled March 20, 2015 foreclosure sale. As explained in its adopting release to Regulation X, "the Bureau [was] cognizant that if applications received at the last moment were allowed to unduly delay a foreclosure from proceeding, there is a risk that the application process could be used tactically to stall foreclosure. . . . [T]he Bureau does not believe it is appropriate to permit applications provided shortly before a foreclosure sale to delay the foreclosure." *See* 78 Fed. Reg. at 10820–21. Accordingly, "None of the loss mitigation procedures apply to a loss mitigation application, including a complete loss mitigation application, received 37 days or less before a foreclosure sale." 78 Fed. Reg. at 10821.

Wiggins' response brief attempts to sidestep these timing problems by telling an entirely different narrative from her Complaint. But as discussed earlier, the Court will not consider this line of argument, as it is inconsistent with the Complaint, and Wiggins has not asked to amend her Complaint.

Finally, the Court notes that much of the relief Wiggins seeks under RESPA is not even available to her. While her Complaint seeks damages under RESPA, her response brief goes further, asserting that RESPA can provide equitable relief "to stop foreclosures when pre-foreclosure modification procedures are not followed." (R. 10, PID 456.) Courts routinely have rejected the notion that RESPA affords injunctive relief and Wiggins has pointed to no relevant authority to the contrary. *See*, *e.g.*, *Caggins v. Bank of N.Y. Mellon,* No. 1511124, 2015 WL 4041350, at *2 (E.D. Mich. July 1, 2015) ("There is no provision found in RESPA under which Plaintiff can seek to have foreclosure proceedings nullified, or force Defendants to negotiate a

9

loan modification."); *Austerberry v. Wells Fargo Home Mortg.*, No. 15-CV-13297, 2015 WL 8031857, at *6 (E.D. Mich. Dec. 7, 2015) ("RESPA does not provide for injunctive relief.").

In sum, Wiggins' Count I has failed to state a plausible claim that Ocwen violated Regulation X.

**B.**

Count II asserts that the foreclosure was illegal under Michigan Compiled Laws § 600.3204(1) and that Wiggins is therefore "entitled to have the foreclosure proceedings halted and any eviction proceedings stayed, and damages caused by the harm and prejudice of the illegal foreclosure." (R. 1, PID 16 ¶ 26.)

Section 600.3204(1) provides that "a party may foreclose a mortgage by advertisement" if all of the following circumstances exist:

> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
>
> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage or, if an action or proceeding has been instituted, either the action or proceeding has been discontinued or an execution on a judgment rendered in the action or proceeding has been returned unsatisfied, in whole or in part.
>
> (c) The mortgage containing the power of sale has been properly recorded.
>
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

Wiggins does not dispute that these conditions were met. Instead, her theory is that Ocwen has no "standing" to foreclose because of its "servicing violations" and "negligence." (R. 1, PID 16 ¶ 25.) Her response brief adds that she was "catalyzed into a foreclosure situation as the Defendant did not adhere to the guidelines and federal statute for an appropriate modification review." (R. 10, PID 458–59.) But again, Wiggins has not stated a plausible claim that Ocwen

ran afoul of the federal regulations covering servicers' obligations when a mortgagor requests loan modification.

Even if she had, Count II would still fail. Wiggins relies on cases from the context of mortgagors' attempts to set aside a foreclosure after the statutory redemption period has passed. In that context, Michigan law provides only a narrow path to relief to set aside a foreclosure sale: a mortgagor must make "a clear showing of fraud, or irregularity." *See Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (citation omitted). But the Sixth Circuit has repeatedly held that "[a]n alleged irregularity in the loan modification process . . . does not constitute an irregularity in the foreclosure proceeding." *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 294–95 (6th Cir. 2015) (citing cases); *see also Nance v. Bank of Am., N.A.*, 638 F. App'x 476, 478 (6th Cir. 2016).

All that Wiggins responds with are lengthy block quotes from cases that have no application here. For instance, Wiggins quotes at length *Starr v. Fannie Mae*, No. 14-14380, 2015 U.S. Dist. LEXIS 29629, at *5 (E.D. Mich. Mar. 11, 2015), where the court held that the plaintiff adequately pled a claim that the foreclosure process had been irregular because "Defendant foreclosed at a time when [Plaintiff] was not actually in default." Thus, unlike here, *Starr* involved a situation in which one of § 600.3204(1)'s four express conditions was not met— the condition that "[a] default in a condition of the mortgage has occurred, by which the power to sell became operative." *See* Mich. Comp. Laws § 600.3204(1)(a). Wiggins also quotes at length from *Galliard v. USAA Fed. Sav. Bank*, No. 12-cv-11459, 2012 U.S. Dist. LEXIS 163211 (E.D. Mich. Nov. 15, 2012). There the court held that the plaintiff adequately pled an irregularity in the foreclosure process for numerous reasons, including that the servicer forced the plaintiff into an insurance policy with excessive premiums after the plaintiff failed to submit proof of coverage.

11

*Id*. at \*26. The court based its holding on the "peculiar chain of alleged events," none of which was an allegation that the servicer botched its review of an application for loan modification.

Accordingly, Wiggins has failed to state a plausible claim for relief under Michigan Compiled Laws § 600.3204.

### C.

Wiggins' negligence claim, Count III, also must be dismissed. Under Michigan law, negligence claims have four elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Haliw v. Sterling Heights*, 627 N.W.2d 581, 588 (Mich. 2001) (citation omitted), *overruled on other grounds* 691 N.W.2d 753 (2005).

Starting with the first element, the Complaint has not plausibly alleged that Ocwen owed Wiggins a duty. The Complaint asserts that Ocwen "had a duty to properly evaluate the information provided by the Defendant [sic] related to income and accurate monthly payments." (R. 1, PID 17 ¶ 28.) In her response brief, Wiggins clarifies that her position is that this duty stems from the federal mortgage servicing regulations that she says Ocwen violated, contained in 12 C.F.R. § 1024.41. (R. 10, PID 461–62.) But Wiggins cites no authority establishing that those regulatory provisions impose such a duty on mortgage servicers.

To the contrary, in a similar context, courts have rejected the notion that regulations under the Home Affordable Modification Program (HAMP) impose on servicers a duty of care owed to borrowers. *See Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 299 (6th Cir. 2015) (citing cases). As the Sixth Circuit has explained, "under Michigan law, the duties established by the mortgage contract govern the relationship between the parties[;] . . . a homeowner who has defaulted may not simply waive the contract and sue in negligence." *Rush v. Mac*, 792 F.3d 600, 605–06 (6th Cir. 2015), *reh'g denied* (Aug. 12, 2015).

Courts have extended this logic to the specific regulation at issue here. For instance, in *Deming-Anderson v. PNC Mortg.*, 119 F. Supp. 3d 635, 641–42 (E.D. Mich. 2015), the Court acknowledged that certain provisions in 12 C.F.R. § 1024.41 refer to servicers' obligation to exercise "reasonable diligence" in some situations. For instance, § 1024.41(b)(1) provides, "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." Additionally, § 1024.41(c)(2)(ii) states that "if a servicer has exercised reasonable diligence in obtaining documents and information to complete a loss mitigation application, but a loss mitigation application remains incomplete for a significant period of time under the circumstances without further progress by a borrower to make the loss mitigation application complete, a servicer may, in its discretion, evaluate an incomplete loss mitigation application and offer a borrower a loss mitigation option." Nonetheless, the *Deming-Anderson* court found that "[n]either of these statements appears to impose on the servicer a duty to exercise "reasonable care in performing the evaluation of Plaintiff for a loan modification." *Id.* at 642. This Court agrees. And another Regulation X provision reinforces this conclusion. In particular, 12 C.F.R. § 1024.41(a) provides, "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." *See also Szczodrowski v. Specialized Loan Servicing, LLC*, No. 15-10668, 2015 WL 1966887, at *6 (E.D. Mich. May 1, 2015) (noting that § 1024.41(a) provision "disclaims any duty for a loan servicer to provide a loan modification").

Furthermore, even if Wiggins had sufficiently pled a duty under § 1024.41, as discussed, she has not plausibly alleged that Ocwen breached the regulation.

Thus, the Court finds that Count III fails to state a plausible claim for relief.

13

**D.**

Lastly, Count IV of the Complaint asserts a claim for "exemplary damages." Yet "exemplary damages are a form of damages, and do not constitute a separate cause of action." *Chungag v. Wells Fargo Bank, N.A.*, 489 F. App'x 820, 826 (6th Cir. 2012) (per curiam) (citing *Kozma v. Chelsea Lumber Co.*, 2010 WL 2836327, *8 (Mich. Ct. App. July 20, 2010). The authority Wiggins cites to urge otherwise has no relevance. She simply recites case-law examining when exemplary damages are appropriate. *See*, *e.g.*, *Unibar Maint. Servs., Inc. v. Saigh*, 769 N.W.2d 911, 924 (Mich. Ct. App. 2009) (observing, among other things, that "[e]xemplary damages are recoverable only for intangible injuries or injuries to feelings, which are not quantifiable in monetary terms"). Thus, this count will be dismissed as well.

**IV.**

The Court now turns to Wiggins' request to file a sur-reply. (R. 13.) She acknowledges that the sheriff's sale happened and claims that a "strange man appear [sic] at her door" in early December 2016 who "was bidding on her home through an online auction site." (R. 13, PID 541.)

The primary thrust of the sur-reply motion is Wiggins' contention that it was improper for Ocwen to sell her home while this case was pending. (R. 13, PID 541.) She cites no authority to support her position though. And she has not filed any motion asking this Court for preliminary relief to preserve the status quo during the litigation. Moreover, as the Court has held, her RESPA claim does not entitle her to injunctive relief, and her claim to set aside the foreclosure under Michigan Compiled Laws § 600.3204 fails to state a plausible claim for relief.

She also now claims—without any explanation or analysis—that Ocwen has violated another regulation, 12 C.F.R. § 1024.35, which covers resolution procedures in certain

circumstances when a borrower notifies a servicer of an error. But a sur-reply is not a proper vehicle for amending a Complaint to add another legal theory or cause of action. Wiggins never sought to assert additional claims regarding this alleged irregularity in the foreclosure process, and the Court will not address such a claim now.

Accordingly, the Court will deny Wiggins' motion for a sur-reply.

## V.

For the reasons discussed, Defendant Ocwen Loan Servicing, LLC's Motion to Dismiss (R. 9) is GRANTED, Plaintiff Tiffany Wiggins' Motion for a Sur Reply (R. 13) is DENIED, and the case is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: February 6, 2017      U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 6, 2017.

s/Keisha Jackson
Case Manager